Judge Mills
delivered the opinion of the Court.
This is a bill brought by a creditor to set aside certain transfers and conveyances of lands, slaves and other estate, made by the debtor, Isaac Halbert, one of the appellants, to his sons John and Henry Halbert, relying on the grounds that these conveyances are fraudulent and void, as to creditors, and to have his demands satisfied out of the estate.
When the demand of the creditor is purely legal, he must have judgment, and an execution returned no estate found, before he can maintain his bill to have fraudulent conveyances of the debtor’s property set aside.
Alienee of land with warranty recovered by paramount title, in a suit commenced against the alienor before he delivered possession, cannot maintain his bill against vendor for damages to be assessed in equity, and to set aside the fraudulent conveyance of the vendor’s estate to avoid the payment of the demand.
*581 The court below decided that the deeds were fraudulent, and gave relief; from which decree, the Halberts have appealed.
It is insisted that the complainant below, has not made out a case for relief, coming within the jurisdiction of a court of equity. His demands are three in number, and as to two of them, this objection is well taken. These two, are two judgments, the one rendered in favor of a Mr. Campbell, and the other in favor of a Mr Thatcher, against Isaac Halbert, the grantor in the fraudulent conveyances, and by Campbell and Thatcher assigned to the complainant. As to these, it is not charged in the bill, or shewn in the record, that ever any execution was issued on the judgments, and returned unsatisfied. Now the rule is so well settled, that a creditor must not only obtain a judgment, but issue out execution and procure its return, in a case where his demand is purely legal, before lie can apply to a court of equity for redress against fraudulent incumbrances on the estate of the debtor, that we need not now discuss the subject, or review the eases, where the principle has been adjudicated, McKinley vs. Combs, &c. 1 Mon 106; Allen &c. vs. Campbell, same, 281; Hendricks vs Robinson &c. 2 John. Ch. Rep 283; Brinkerhoffe vs Brown, 4 John. Ch. Rep. 671; Willams vs Brown, same, 682; M’Dermot vs Strong 687; and the cases cited in the preceding. According to this principle, the claims of the complainant, founded on these two judgments must fail.
It is contended that his third claim must fail also. It is stated in the original bill, that he had bought land of Isaac Halbert, for which he had received a conveyance with general warranty, and that the land was lost by a paramount title, in an ejectment; that the said land lay in woods, adjoining said Halberts remaining land, and he, the complainant, bad not taken possession thereof, when the ejectment was brought against Isaac Halbert himself, and defended by him, and the possession which remained with Halbert, was recovered of him, and this the complainant considered equivalent to an eviction, *582 and as complete a breach of the warranty, as if the land had been recoverded by proceedings against himself. That he has never sued on his warranty or obtained judgment at law, because it was useless, as the said Isaac Halbert, protected himself by the fraudulent conveyances complained of, and had no other estate on which execution could operate. Ho therefore, prayes the court of equity, to take original cognizance of his case, to liquidate and decree to him, this demand for a breach of the warranty, and at the same time, to set aside these fraudulent conveyances, and to satisfy his claim, out of the estate so conveyed.
Amended bill.
Where the testator devisee to his two executors no interest, but a joint authority to sell, the deed of one passes nothing.
*582 It is clear according to this statement of the case, the complainant could not maintain his bill, on this claim. His remedy if any he had, was purely legal, and lie was bound to resort to a court of law, to enforce it. And if on the other claims, which his assignors had pursued to a judgment at law, the would not sustain the bill, because they had not gone the whole length of execution, a fortiori he could not come into equity when he had not even begun his action at law.
But by an amended bill, he places his case in a different shape. He charges as a discovery made, pending his suit, that he was defrauded by the said Isaac, in the purchase of the tract of land which was conveyed to him by warranty; that said Isaac Halbert had represented himself, as conveying the title granted by a patent to a certain Charles Hazlerigg and that neither by the will of Hazlerigg nor a conveyance made subseqnent thereto by his executors, did any title pass to said Isaac, wherefore he requires his contract to be rescinded, and his money to be restored to him.
This state of case, we conceive, he has made out in proof, notwithstanding the denial of the answers. Charles Hazierigg, by his will, directed his executors to sell his land for purposes therein specified. There was no vestiture of title in the executors, but only a mere power to sell. Isaac Halbert, the present defendant, and another person were appointed executors, and qualified as such, and afterwards the *583 said Isaac and the other executor united in a conveyance of this tract of land, as executors to said Isaac, in his individual character, thus producing the most singular confusion of grantor and grantee, that we have ever witnessed; the ridiculous spectacle of a man acting as seller and buyer himself; executing a power, and receiving the execution of it, in the same breath.
In such case, the deed of conveyance of the two executors, as such, to one of themselves in his individual character, is nought, both in law and equity.
Creditor whose claim is on equitable cognizance, may combine in his bill to establish his claim a complaint against the fraudulent conveyance of the debtor’s estate to avoid his demand.
The power given by the will, was a joint one, and one could not execute it, without joining his co executor, during the life of both, and Isaac Halbert could not unite in executing the power to himself, and it therefore clearly follows, that the deed which Isaac Halbert and his co-executor, thus made to himself, passed no title, either at law or equity, and Isaac Halbert had none, when he professed to sell to the complainant, and as the complainant never had taken tire possession, and could not get it by reason of the adverse elder grant, which had evicted the land, he has, as we conceive, made out by his pleadings and proof, a good ground for resorting, in the first instance, to a court of equity, for the purpose of rescinding the contract, and such a rescission ought to have been directed by the decree of the court below, directing him to release his title hack to Isaac Halbert, and Halbert to restore the consideration with interest, instead of a decree, giving him damages for a breach of warranty.
This result produced by the amended bill, places the complainant as to this claim, on a favorable ground, as to the conveyances complained of as fraudulent, and authorizes him to attack them as to this claim, without a judgment and execution. For the reason that the chancellor requires a party possessing a claim purely legal, to proceed to execution at law, is, that he shall prove by going the whole length, that the law is inadequate to afford him redress, before be can call the chancellor to his aid. But where the claim asserted, is purely equitable, and such as the chancellor will take cognizance of, in the first instance, he will at the same time, go the entire extent, and enquire into obstructions in the road of enforcing the demand. The *584 complainant therefore, when he goes to equity to assert and liquidate the claim, may at the same time combine with it a complaint against the fraudulent acts of the debtor, in attempting to place his estate beyond the reach of creditors, while he himself enjoys the results.
Where the father, being indebted, conveyed all his estate to his son resident with him, and changing places with him, became the boarder and the son landlord, the conveyance held fraudulent and void as to creditors.
Decree against the fraudulent alienees of slaves and personalty, which they had sold in fraud of the creditors, for them to pay the money—approved.
This brings us to the question of fraud or no Fraud in the conveyance to the sons, the other defendants: on which we shall not long dwell. The father ever since these conveyances, has kept substantially the possession of, and enjoyed this estate, and all he did by bis sales and conveyances, was ostensively and colorably to give up the reins of government to the son and exchange places with him; the son to become landlord and master, and the father tenant and underling, and in this shape receive as much profit as if he bad remained himself in full command—a characteristic of fraud, which has always conclusively destroyed such conveyances. All this was done subsequent to the sale and conveyance to the complainant.
Another question made in argument, is worthy of consideration, as it may operate on future proceedings in the cause. The estate fraudulently conveyed. consisted of sundry articles of personal property in value between one thousand and fifteen hundred dollars, sundry slaves and a tract of land. The defendants in their answers, made no disclosures, as to what had become of the slaves and personalty, except that they mention a sale of some of them. The proof conduces to show that the personal estate, is not now visible, that some of the slaves have been transported and sold in the Arkansas country, and the rest removed some-where unknown to the witnesses.
The court did not set aside this conveyance or transfer of the slaves, and personalty in express terms; but after declaring the transactions to be fraudulent, decreed against John and Henry Halbert at once, as well as Isaac, the amount of the demand, it being proved that John and Henry had sold and received mow money tor the personal estate, and slaves sold by them, than was adequate *585 to pay the whole debt. now demanded, and this part of the decree is objected to; and it is insisted that all the chancellor could do. was to set the deeds aside and let in the creditor upon the estate coveyed, and not to have made John and Henry Halbert personally liable for what was sold.
Alienees of the debtor’s estate in a transaction to defraud his creditors, are held by the chancellor as the trustees of the creditors, and shall surrender the property or account for its value or proceeds.
In New York one who had possessed himself of the fraudulent debtor’s property, and placed it out of the reach of execution, made accountable to the creditor.
However this decree might have operated upon the interest of the creditor, it is not easy to perceive any objection to it in the mouth of the fraudulent grantees.
It may he assumed as a rule in equity, that such a grantee will he construed to he, and is placed by the chancellor, in the place of a trustee for the creditors, and as such, becomes responsible for ail his acts, in disposing of the lied fraudulently conveyed to him. If he has it when attacked by the creditors, he may surrender it to be subjoined in kind. If he has parted with it, or destroyed it, either before or after suit brought against him, and placed it beyond the reach of the creditors, he must account for its value, and whether the chancellor be or Hot particular and tender of his rights in settling this account, we need not enquire; the power extends at all events to the value of the thing, fraudulently conveyed If this principle is not maintained, in vain does the chancellor interfere to overhale fraudulent grants. If his power ceases, when the thing granted is gone beyond his reach, then the nimble movement of the grantee is only necessary, to escape with the estate, and the creditor is remediless, however intentionally fraudulent the grantee may have acted in removing it.
In such a case we concur with chancellor Kent, in a bill brought for the purpose of reaching such concealed or removed estate in Hendricks vs Robinson, 2 John. Ch. Rep. 296, and with him say, that we “have no doubt that this court (of chancery) can and ought to lend its aid, whenever that aid becomes requisite to enforce a judgment at law, by competing a discovery and account, either as against the debtor, or as against any third person, who may have possessed himself of the debtor’s *586 property, and placed it beyond the reach of an execution at law.”
—And an alienee of the fraudulent debtor decreed to pay the creditor the proceeds of the sales he had made of the property conveyed to him—
—Same rule decreed in Virginia—
—Like principle applied here.
Holder of the legal estate, with notice of an outstanding equity, held accountable by the owner of the equity, for the proceeds of the sale to an innocent purchaser.
*586 The same chancellor furnishes another strong authority on this point, in the case of Riggs &c. vs. Murray, 2 John. Ch Rep 565; where, after investigating the merits of divers deeds involved. he pronounced one of them fraudulent as to the creditors, and the estate held under the fraudulent deed having all been disposed of, and that to a very large amount, yet he directed an account to he taken of the value and proceeds thereof, as a charge against the fraudulent grantee in person, and subjected him to the payment thereof.
In the case of Wright vs. Handcock & Co. 3 Mon. 521. the court of appeals of Virginia, compelled a fraudulent grantee, to account for and pay out of his own estate, a considerable sum, as the value of the estate, held by him, under the fraudulent deed, and disposed of by him. There the fraudulent grantee had shipped the articles granted, on board of a schooner, from some port in Virginia to Boston, before the creditor filed his bill, and the bill was filed a few days before the sale of the articles was effected by the consignee in Boston. On the final hearing, the court of chancery, before a commissioner, look an account of the sales in Boston, and finally on other points arising in the cause, did not Subject the fraudulent grantee, to the demand But the appellate court reversed that decree, and by its mandate, directed a decree at once for the price a against him.
The same rule was applied, without discussion, by this court, in the case of Jones vs Henry and Pitts heirs, 3 Litt. Rep. 4 7. in which a conveyance of slaves and personal estate was pronounced fraudulent. and the grantee was directed to produce the articles in kind; and if he could not, to account for their value.
On a principle somewhat analogous, a holder of a legal estate, against which there was an outstanding equity, having disposed of the estate. to a bonafide purchaser, for a valuable consideration, without *587 notice, whereby the equitable holder was defeated an the recovery of the land was held answerable to the owner of that equity, for the value of the so disposed of, by this court, in the case of Arterburn vs. Gwathmey &c. 3 Bibb. 306.
After the death of the grantor to defraud his creditors, if the alience sell the property, the creditor may charge him de son tort—though the rightful executor had no claim on him.
Rule approved on general principles.
Held in Mass and N. York, the creditor may reach the thing itself in the hands of the innocent alienee of the debtor’s fraudulent alienee-
Courts of law have in effect maintained the same principle. Whether a prison entertaining a fraudulent grant, and speedily placing the estate beyond the reach of a creditor, would or would not be liable to an action on the case at the suit of the creditor, we need not now determine. But where a fraudulent grantee holds estate, convened to him by absolute deed, he cannot regain it himself, nor can the rightful executor or administrator of the grantor do it; but if alter the death of the grantor, the grantee sells the estate, he can be charged at the suit of a creditor, for the value thereof, as executor de son tort, in which the value alone, and not the estate, itself, is recoverable, see Hamilton vs. Russel, 7 Cranch, 309, Without, therefore, going bark to review the cases in the English chancery, point may be considered as settled by modern adjudictations in America, and the rule is so consonant to justice, reason, good conscience and sound policy, that we cannot doubt its propriety. For if a person may combine with a debtor to get hold of the fund which equitably belongs to creditors, for the purpose of defrauding there creditors, and then after a speedy disposition of the estate by sale or transportation, cannot be charged with the value, and the creditors are left remedyless, it must strike every one, that our laws arc defective, and defeasible, by the active and speedy consummation of fraud.
We are aware that it has been decided by authorities entitled to a high respect, that the grantee of a fraudulent grantee, although he be an innocent and bona fide purchaser, for a valuable consideration, cannot acquire any title against the creditors, because the deed of bis grantor was void by statute, This was decided by the supreme court of errors, in Connecticut, in Preston vs. Croput, 1 Day’s Rep. 527, note, on their statute which like our’s is *588 a compound of the statutes of 13th and 27th of Eliz. The same is maintained by chancellor Knit, in Roberts vs. Anderson, 3 John. Ch. Rep. 379. in construing the a fore said English statutes. Whether the same principle ought to prevail in the construction of our statute of frauds, we shall not now enquire; but leave it until a proper case occurs, to settle that question.
—Query of this under our statute here.
Alienor to defraud his creditor is estopped to assert claim to either the property or its proceeds—
—Not so as to the creditors.
But if it be conceded that the creditor may reach the thing sold by the, fraudulent grantee, in the hands of a purchaser, however innocent that purchaser may he, it does not follow that he may not have his election to pursue either the thing sold to another purchaser, or to make the fraudulent grantee liable for the value, especially in a case like this, where the estate, is transported It will only give the creditor a greater security for his debt, and be more effectual check to frauds, and render them less effectual against the rights of creditors. We therefore conclude that this part of the decree cannot be complained of by the appellants.
The principle for which we contend, is not based on the liability of the fraudulent grantee to account with his grantor, or on a right to reach the choses in action of the grantor. This could generally not be done before our late act subjecting choses in action belonging to the debtor, not fraudulent, to the decree of the chancellor.
The grantor is generally estopped by his own deed, to raise an account with, or charge his grantee with either the profits or price of the estate, so fraudulently conveyed, and no other person but the creditor can raise the account.
It is because there in a secret trust between grantor and grantee, that the estate shall be kept for the use of one or both of themselves, while the creditor is kept out of it, when the grantee ought to be a trustee for the creditor, that equity will consider and treat him as a trustee for the creditor; and thus place matters as they ought to be. In this case, the fraudulent grantees were, by the secret trust existing between them and their father, trustees *589 for his use and benefit, and by the statute, 1 Dig L. K. 516, it is provided that “estates of every kind, holden or possessed in trust, shall be subject to like debts and charges of the persons, to whose use or for whose benefit they were or shall be respectively hidden or possessed, as they would have been subject to, if those persons had owned the like interest in the things holden or possessed, as they own or shall own, in the uses or trusts thereof.” Surely it cannot be violating the spirit of this statute, to compel the fraudulent grantees, who are in fact trustees for their father, though ostensibly owners in their own right, to account to as great an extent, as their father would be, if he still held the estate.
Dissent of the Chief Justice.
Decree in a cause against fraudulent debtor and his alienees, of slaves, other personally, and lands, shall first set aside the conveyance, then subject the other personally, next the slaves, and lastly the lands: or——Where alienees had sold personalty &c to the amount of complainants damand, he may, if he choose, take a decree in personam against them.